## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  December 1, 2016                    522576
_____

In the Matter of ROBERT W.
   KOWAL,
                        Petitioner,

        v
                                            MEMORANDUM AND JUDGMENT
THOMAS P. DiNAPOLI, as State
   Comptroller, et al.,
                        Respondents.
_____

Calendar Date:  September 15, 2016

Before:  Peters, P.J., Egan Jr., Lynch, Rose and Aarons, JJ.

                        _____


        Edelstein & Grossman, New York City (Jonathan I. Edelstein
of counsel), for petitioner.

        Eric T. Schneiderman, Attorney General, Albany (Kate H.
Nepveu of counsel), for respondents.

                        _____


Aarons, J.

        Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Albany County) to
review a determination of respondent Comptroller denying
petitioner's application for accidental disability retirement
benefits.

        Petitioner, a court officer for approximately 15 years, was
assigned to work at the Middletown City Court.  On one morning in
February 2012, petitioner, who had the rank of court officer
sergeant, was working in the lobby by the X-ray machine and
magnetometer assisting two other court officers with the security
screening process for those individuals seeking entry into the

courthouse. Approximately 40 people were in the general area when petitioner heard a fellow court officer yell "gun." Petitioner testified that he observed an individual outside holding a shotgun. The individual crouched down, "blasted through the [glass-entry] door" with the shotgun and then fired two more shots. Petitioner, who was approximately 15 feet away from the assailant, responded by firing at him with his work-issued firearm. Petitioner shot the assailant, who went down and subsequently died. A search of the assailant revealed that he was carrying an additional 40 shotgun shells.

Petitioner was subsequently diagnosed with posttraumatic stress disorder. In June 2013, petitioner filed an application for accidental disability retirement benefits stemming from the February 2012 courthouse shooting. The application was denied on the basis that the incident did not constitute an accident within the meaning of Retirement and Social Security Law § 605-a. Respondent Comptroller upheld the denial of petitioner's application and this CPLR article 78 proceeding ensued. We confirm.

It is well settled that for purposes of the Retirement and Social Security Law, an accident is "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Kenny v DiNapoli, 11 NY3d 873, 874 [2008] [internal quotation marks and citations omitted]; see Matter of Witts v DiNapoli, 137 AD3d 1456, 1457 [2016]; Matter of Roberts v DiNapoli, 117 AD3d 1166, 1166 [2014]; Matter of Rykala v New York State Comptroller, 92 AD3d 1077, 1077 [2012]). "Significantly, it must result from an activity that is not undertaken in the performance of ordinary job duties and that is not an inherent risk of such job duties" (Matter of Schultz v DiNapoli, 137 AD3d 1454, 1455 [2016] [citations omitted]; see Matter of Fulton v New York State Comptroller, 122 AD3d 983, 983-984 [2014], lv denied 24 NY3d 915 [2015]; Matter of Jarosz v DiNapoli, 95 AD3d 1500, 1501 [2012]; Matter of Murray v New York State Comptroller, 84 AD3d 1681, 1682 [2011]), nor can it stem from hazards that may be reasonably anticipated (see Matter of Cavallo v DiNapoli, 117 AD3d 1366, 1367 [2014]). Petitioner bears the burden of establishing that the event producing the injury was an accident (see Matter of Magistro v DiNapoli, 142 AD3d 750, 751 [2016];

Matter of Schoales v DiNapoli, 132 AD3d 1184, 1185 [2015]), and the Comptroller's determination will be upheld where it is supported by substantial evidence (see Matter of Greco v DiNapoli, 123 AD3d 1366, 1367 [2014]; Matter of Del Salto v DiNapoli, 115 AD3d 1147, 1149 [2014]).

There is no question that petitioner's heroic efforts saved many lives on the morning in question, and he is to be commended for his service in the protection of others. There is also no question, however, that — based upon a review of petitioner's job description and testimony — petitioner was injured during the course of executing the very duties that he had been assigned to perform and in the context of responding to a risk that was both reasonably foreseeable and, more to the point, inherent in the execution of his regular duties. The record evidence discloses that petitioner, as a court officer, was "responsible for the safety and well-being of all persons on the premises of the courthouse." In furtherance of maintaining such safety and well-being, petitioner's job duties and responsibilities included, among other things, providing security and assistance throughout the courthouse and assuming appropriate responsibilities in emergency situations, which can involve controlling, restraining or removing disruptive individuals. Petitioner's job description required that he have knowledge of the use-of-force guidelines, facility lock-down and building evacuation procedures, the "[a]bility to handle conflict situations" and "procedures for handling emergency responses in situations such as fires, aided cases . . ., bomb threats, hostage situations, crowd control, and hazardous materials." Petitioner was also required to have "[k]nowledge of rules and procedures for possession, control, use, registration, inspection and safeguarding of firearms."

While petitioner claims that he was not trained to address the specific attack forming the basis of his petition, he, as the dissent recognizes, received training on the use of his firearm and had knowledge of the circumstances in which he could discharge his firearm and resort to deadly force (see Matter of Beckley v Nitido, 123 AD3d 1330, 1331 [2014]). Indeed, petitioner testified that court officers are required to carry loaded firearms in order "[t]o perform our duties, to protect ourselves and the public . . . .. It's also a deterrent for

someone."  In view of the foregoing, we conclude that petitioner's actions in response to the assailant's shots were in furtherance of his responsibility to safeguard and protect the individuals in the courthouse and not inconsistent with his court officer duties, training and obligations.  Accordingly, the Comptroller's determination that petitioner's injury did not arise from an accident within the meaning of Retirement and Social Security Law § 605-a is supported by substantial evidence (see Matter of Kilbride v New York State Comptroller, 95 AD3d 1496, 1496-1497 [2012], lv denied 19 NY3d 813 [2012]; Matter of Rykala v New York State Comptroller, 92 AD3d at 1078; Matter of Silver–Smith v New York State & Local Retirement Sys., 298 AD2d 696, 697 [2002]).

Furthermore, while there is no question that petitioner was within the assailant's line of fire, and, in fact, the shots came "within inches" of petitioner, nothing in the record suggests that he was any more of a target – or was in any greater danger – than the other people in the immediate vicinity.  In our view, the approximately 40 people in the general area, including the half-dozen people on the security line waiting to pass through the magnetometer, were, as the dissent describes, all "immediately in harm's way."  For these reasons, we cannot subscribe to the dissent's characterization that petitioner was a victim of an assault.  The record reveals that, upon hearing his fellow court officer yell "gun," petitioner saw the assailant crouch down and fire a shot first through the glass-entry door and then fire additional shots without regard to who or what stood in his way to effectuate his ill deed.  In response to his observation of the assailant, petitioner quickly returned fire and saved innocent lives by doing what he was trained and required to do as a court officer.  Indeed, the threat of an armed attack is undoubtedly one of the many reasons the Unified Court System employs court officers and utilizes security-screening procedures.  The execution of petitioner's duties to protect those individuals placed in immediate harm by a gunman, whether they were other court officers, judges, attorneys, civilians or prisoners awaiting their court-scheduled appearance, is not without peril and comes with the unfortunate, but inherent, risk of being shot at by a gunman (see Matter of Beckley v Nitido, 123 AD3d at 1331).  As such, even though the

record contains proof from which it could be concluded that petitioner was injured as the result of an assault, this does not negate the Comptroller's finding that petitioner was injured during the course of the performance and execution of his job duties (see Matter of Emerson v DiNapoli, 115 AD3d 1145, 1145-1146 [2014]; Matter of Kilbride v New York State Comptroller, 95 AD3d at 1497; Matter of Wise v New York State Comptroller, 38 AD3d 1032, 1034 [2007], lv denied 9 NY3d 811 [2007]; Matter of Ammann v New York State Comptroller, 13 AD3d 858, 859 [2004], lv denied 5 NY3d 702 [2005]).

Peters, P.J., Egan Jr. and Rose, JJ. concur.


Lynch, J. (dissenting).

I respectfully dissent. As respondents acknowledge in their brief, and as this Court has previously explained, "[respondent] Comptroller draws a distinction between injuries received by a court officer as the result of an assault and injuries received as the result of an attempt to restrain a disruptive individual while performing the duties of a court officer. According to the Comptroller, the former constitutes a compensable accident, while the latter constitutes a risk inherent in the course of the court officer's employment" (Matter of Ammann v New York State Comptroller, 13 AD3d 858, 858 [2004], lv denied 5 NY3d 702 [2005]). As respondents further point out, we have upheld the Comptroller's determinations in a line of cases concluding that injuries sustained by court officers while attempting to restrain or remove disruptive individuals are not "accidental" in nature, but inherent in the routine performance of their duties (see Matter of Boncimino v New York State Comptroller, 125 AD3d 1089, 1090 [2015]; Matter of Roberts v DiNapoli, 117 AD3d 1166, 1166-1167 [2014]; Matter of Emerson v DiNapoli, 115 AD3d 1145, 1145-1146 [2014]; Matter of Kilbride v New York State Comptroller, 95 AD3d 1496, 1496-1497 [2012], lv denied 19 NY3d 813 [2012]; Matter of Rykala v New York State Comptroller, 92 AD3d 1077, 1077-1078 [2012]; Matter of Ammann v New York State Comptroller, 13 AD3d at 858-859).

The evidence establishes that petitioner's job duties and responsibilities required him to provide for the security and safety of the courthouse occupants, to restrain or remove disruptive individuals and to respond to emergency situations. Further, petitioner was trained in the use of a weapon and use-of-force guidelines, including deadly physical force. An assessment of petitioner's job description, however, does not conclude the analysis, for we must account for "the precipitating cause of injury" (Matter of McCambridge v McGuire, 62 NY2d 563, 567 [1984]; see Matter of Sica v DiNapoli, 141 AD3d 799, 800-801 [2016]).

Without question, the precipitating event here was extraordinary. Petitioner commendably acted within his job description, training and instinct, but there is nothing routine about this event (see Matter of Cantone v McCall, 289 AD2d 863, 864 [2001]). Petitioner testified that, after hearing a fellow officer yell "gun," he observed the assailant crouch down at the glass-entry door and fire the shotgun, blasting a hole through the door. As to the shooting sequence, petitioner testified that "[h]e fired. I fired. He fired. I fired." Petitioner explained that the shotgun pellets came "within inches" of striking him and actually struck a fellow court officer. In my view, the distinctive, controlling factor here is that the assailant initiated the unprovoked attack, firing shots directly at petitioner and others in the lobby area. This precipitating act constitutes an assault against petitioner and, thus, qualifies as an accident within the embrace of Retirement and Social Security Law § 605-a. The three cases relied upon by the Hearing Officer to conclude that the shooting of an individual by a police officer in the line of duty is not an accident — Matter of Berbenich v Regan (81 AD2d 732 [1981]), Matter of Taylor v Regan (103 AD2d 884 [1984]) and Matter of Beckley v Nitido (123 AD3d 1330 [2014]) — are all distinguishable by the determinative fact that petitioner, himself, was one of the targets of the assailant's gunfire and immediately in harm's way.

In my view, the Comptroller's determination that the February 2012 incident did not constitute an accident within the meaning of Retirement and Social Security Law § 605-a is not supported by substantial evidence in this record. As such, I

would annul the determination and remit the matter to the Comptroller for further proceedings on the application.


     ADJUDGED that the determination is confirmed, without costs, and petition dismissed.


ENTER:

Robert D. Mayberger
Clerk of the Court